IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TERRI ESPINOZA,                         No   C 07-3115 VRW

       Plaintiff,                    ORDER

       v

MICHAEL J ASTRUE, Commissioner of
Social Security,

       Defendant.
_____/

       Plaintiff Terri Espinoza seeks judicial review of the Social Security Administration's ("SSA's") final decision denying her application for supplemental security income ("SSI") under 42 USC § 405(g).  Doc #14 at 1-2.  Plaintiff moves for summary judgment to find her disabled or in the alternative for remand for additional administrative proceedings under FRCP 12(c).  Doc #14 at 1-2.  Defendant moves for summary judgment to affirm the final decision.  Doc #15-2 at 2.  For the following reasons, plaintiff's motion for summary judgment or remand is DENIED and defendant's cross-motion for summary judgment is GRANTED.

//

I

Plaintiff was born in 1963. Doc #5, Administrative Record ("AR"), at 84. She completed school up to the eleventh grade, then dropped out in 1980 to work "full-time." AR 99, 379. But her income of $2,040.07 in 1980 and $2,373.58 in 1981 suggest that she did not work full-time. AR 87. In fact, plaintiff's highest annual income from 1979 to 2002 was $4,504.61 in 1986. AR 87. Now plaintiff claims she is disabled, cannot work and qualifies for SSI.

According to plaintiff's accounts, she grew up with a physically violent, alcoholic mother, was raped twice as a teenager and used amphetamines until 1993. AR 216-17. Now, plaintiff is an avid church goer. AR 107-08. She describes herself as the "soul [sic] supportor [sic] of a single family household" with a twenty-two-year old daughter and a twenty-four-year old son. AR 105, 108. As of 2002, plaintiff lived in an apartment with her daughter and performed household chores. AR 105-06, 389. Plaintiff uses public transportation to go to church, visit friends and do errands. AR 107. An August 21, 2006 psychological evaluation noted that plaintiff resided with her "husband" — but there is no other evidence in the record relating to a husband. AR 350.

A

Plaintiff's last "full-time" job was in 1997 at Century Theaters where she allegedly injured her back. AR 381, 383, 419. According to plaintiff:

> I didn't notice that the butter oil was dripped onto the floor from the paper towels and I went to go take a step. And my right leg went out from

> underneath me and I was falling. And as I was
> falling, my arms — I caught myself falling and I
> put my arms — broke the fall onto — on the
> counter. I was like this hanging on the counter
> and I ended up on my back.

AR 383. She reported the slip and fall to Century Theaters and received medical attention in which doctors prescribed two weeks' rest. AR 383. Upon returning to work, plaintiff claimed:

> I couldn't rotate around the theater as your [sic]
> job required. So they put me at the — as a
> cashier standing in one spot and I couldn't stand
> in one spot. So they either — they gave me an
> ultimatum, either I quit or they terminated me.
> And I told them to go ahead and terminate me so I
> could apply for unemployment. And at that time I
> applied for unemployment and I was — I received
> unemployment and then after my benefits ran out, I
> applied for unemployment disability and I received
> it.

AR 383. Plaintiff was unable to collect worker's compensation. Plaintiff testified:

> I was denied workmen's comp because the company
> that — where I injured myself at did not
> acknowledge the injury. They acknowledged it, but
> they didn't — for some reason after the
> investigator investigated it, the company didn't
> want to pay the benefits — which I don't
> understand, because that's how I got unemployment
> disability after the injury.

AR 395.

Plaintiff claimed this slip and fall to be the catalyst for her alleged back pain and spasms — the primary reason she cannot work full-time. AR 93, 419. But plaintiff did not submit any medical records relating to the slip and fall and no medical consequences other than two weeks' rest appears in the record. The medical records contain no objective laboratory or clinical findings that plaintiff was disabled under SSA rules. In fact, from 2000 to 2002, she worked on and off as a food demonstrator

3

which required her to microwave and chop up food for public sampling. AR 380, 418.

The earliest medical records in the AR are dated from September 10, 2001 when plaintiff started seeing treating physician Dr Manuel Luna, MD, for "anxiety attacks, seizures, pain, dizzy spells, an underactive thyroid and headaches from stress." AR 194-95. According to Dr Luna's records, between September 10, 2001 and November 29, 2004, plaintiff saw Dr Luna approximately seventeen times but "no-showed" or canceled appointments approximately thirty-three times. AR 187-203, 251-60, 275-90. Dr Luna's notes reflect plaintiff's regular complaints of the self-reported symptoms described above and that he regularly prescribed her a varied mix of pain relievers and antidepressants including, but not limited to, Vicodin, Activert, Ativan, Lorezepam, Hydrocodone, Meclizine, Antivert, Levoxyl, Zyprexa, Paxil, Valium, Darvocet, Soma, Neurontin, Lyrica, Corsoma, Naprosyn and Methylprednisolone. AR 98, 187-203, 251-60, 275-90, 386, 388, 422, 426, 428-29.

On May 11, 2002, plaintiff fell on her tailbone. AR 206. She walked into the Mills-Peninsula Health Services emergency department where she complained about intense upper back pain. AR 206-07. Dr David Marcus, MD, x-rayed plaintiff's thoracic spine and found mild degenerative changes but no fracture. AR 209. Dr Donald Rich, MD, noted that plaintiff was experiencing back pain but that she was ambulating well and had a normal neurological examination. AR 206.

On March 30, 2004, plaintiff underwent a magnetic resonance imaging ("MRI") examination of her lumbar spine. AR 300. Radiologist Dr Adam Nevitt, MD, found that plaintiff suffered from

degenerative disc disease with mild canal and foraminal narrowing. AR 300. On August 13, 2004, plaintiff underwent an electromyogram ("EMG") to investigate her alleged muscle weakness. AR 271. Dr Ernest Sponzilli, MD, found that plaintiff suffered from internal disc disruption with dynamic stenosis — consistent with Dr Nevitt's findings — but that plaintiff was otherwise normal. AR 274.

Plaintiff claimed she saw a therapist in 2002 but the AR does not include any mental health records from treating sources. AR 350.

B

Plaintiff protectively filed her third application for SSI on May 6, 2002 with an onset date of May 1, 2002. AR 84, 378. The application claims that plaintiff suffers from "manic depression, anxiety attacks, vertigo, dislocated herniated disc, back spasms, underactive thyroid, seizures and pain" based on the 1997 slip and fall. AR 84, 93. Nowhere in the record does plaintiff explain the five-year discrepancy between the claimed onset date and the alleged injury date.

The Department of Social Services ("DSS") — which arranges medical examinations for the SSA — referred plaintiff to Bayview Medical Clinic for physical and psychological assessments to determine the extent of her alleged disability. AR 210, 216. Examining physician Dr Jaskarn Momi, MD, made the following residual functional capacity ("RFC") assessment:

> No limitation on the range of movement. * * * The generalized jerks, which she is getting every 2 to 4 minutes are not explained by her back injury, and

5

> I really do not know why she started having more jerks when I was palpating the back muscle, though, no spasms of the back muscle was noted [sic] at that time. In my opinion, she should be able to take up any job requiring continuous sitting 2 to 3 hours at a time with total of 8 hours during the 8-hour shift. Standing and walking 1 to 2 hours at a time with a total of 4 to 6 hours during the 8-hour shift. She can carry 10 pounds of weight most of the time of the day. She can carry up to 20 pounds of weight.

AR 213-14. Examining psychologist Dr Tania Shertock, PhD, made the following psychological assessment:

> Claimant appears to be unable to maintain concentration, persistence, and pace without a lot of encouragement. She is able to perform some detailed but not complex tasks. Claimant was unable to relate well in the interview and would be unable to appropriately interact with supervisors and co-workers in a job setting.

AR 219.

The medical records and assessments of Drs Luna, Momi and Shertock were then provided to Disability Determination Services ("DDS"), which assists the SSA in making disability determinations. Non-examining DDS consultant Dr Shashi Mathur, MD, found that plaintiff was able to lift fifty pounds occasionally and twenty-five pounds frequently and stand, walk or sit six hours in an eight-hour workday. AR 221. Dr Mathur found that plaintiff had no other limitations. AR 222-24.

Non-examining DDS consultant Dr Danilo Lucila, MD, found only moderate limitations in plaintiff's ability to understand, remember and carry out detailed instructions. AR 229, 243-45. Dr Lucila also noted a moderate limitation in social interaction but found plaintiff able to ask simple questions, to request assistance and to adapt to different environments. AR 243-45.

\\

DDS examiner Love reviewed the assessments of Drs Mathur and Lucila and determined plaintiff's primary diagnosis to be "sprains and strains" and secondary diagnosis to be "affective mood disorders." AR 60. The SSA determined that plaintiff's conditions were not severe enough to prevent her from working and denied her claim. AR 62.

Plaintiff requested reconsideration and the SSA conducted an independent review of plaintiff's claim with updated medical records from Dr Luna. AR 66-67. The SSA again denied plaintiff's SSI claim. AR 67.

On March 31, 2003, plaintiff requested a hearing by an administrative law judge ("ALJ") and obtained a May 12, 2004 hearing date. AR 53, 71. In the interim, plaintiff underwent an MRI examination of her lumbar spine and received a medical assessment from "treating physician" Dr Leland Luna, DO, a physician in practice with Dr Manuel Luna who appears throughout the AR — in medical records and testimony — as plaintiff's actual treating physician. AR 186-203, 251-90, 300, 431.

The MRI examination showed degenerative disc disease. AR 300. Dr Leland Luna's assessment stated that plaintiff could "occasionally" sit, stand or walk for only two hours in an eight-hour period and could "never" lift ten pounds or less. The assessment also stated plaintiff could "rarely" bend, "occasionally" squat and "frequently" reach above shoulder level, AR 267-68, and that pain affected her concentration, persistence and pace and interfered with her ability to perform simple and routine work. AR 268.

\\

7

Despite describing himself as plaintiff's "treating physician" and possessing plaintiff's MRI images, Dr Leland Luna reported that he had "no objective laboratory or clinical findings" that confirmed the existence of plaintiff's conditions. AR 267, 269. He attributed this dearth of evidence to "no information provided from patient — she says her lawyers have data from previous physicians." AR 267.

On May 12, 2004, the ALJ held a hearing in which plaintiff testified about her education, work experience, slip and fall and alleged disability. AR 379-96. Plaintiff testified that her alleged injuries made it difficult for her to go out but that she nonetheless went to church three times a week. AR 388, 391-92. Plaintiff also testified that she was not able to lift any weight, but, when questioned by the ALJ, admitted that she could lift at least two pounds, the weight of her purse. AR 393-94.

The ALJ posed a hypothetical question to vocational expert ("VE") Nancy Rynd describing an individual who could (1) sit for six hours and stand for four to six hours in an eight-hour workday; (2) occasionally crawl, stoop, bend and squat; (3) lift twenty pounds occasionally and ten pounds frequently; (4) only perform simple repetitive tasks; and (5) had mild deficits interrelating with supervisors, co-workers or the public. AR 397-98. The VE stated such an individual was capable of light work and could perform plaintiff's previous jobs as a food demonstrator and cashier. Id. When the ALJ modified the hypothetical question to allow for lifting ten pounds occasionally rather than frequently, the VE stated such an individual was capable of sedentary work as a
\\

ticketing clerk but noted that the position did not exist in significant numbers. AR 398-99.

The ALJ found that the medical evidence established plaintiff suffered from "lumbar degenerative disc disease, hypothyroidism, history of dizziness, adjustment disorder with depressed mood, posttraumatic stress disorder, personality disorder, and polysubstance dependence in partial remission" but that these conditions did not prevent her from working.[1] AR 158.

Accordingly, the ALJ found that plaintiff was able to perform light work with certain limitations —— those included in the first hypothetical question posed to the VE —— and could perform her past relevant work as a cashier. AR 158. The ALJ also found plaintiff's testimony not credible based on the limited objective clinical findings and treatment, the opinions of examining physician Dr Momi and state agency examiners and plaintiff's testimony regarding her activities. AR 155, 157-58. The ALJ noted conflicts in plaintiff's testimony in that she took eight hours to do chores but also watched television all day, needed a cane to go to church but did not use a cane at the hearing and could not lift "anything" but carried her purse at the hearing. Id.

Plaintiff successfully requested review of the ALJ's decision and the Appeals Council remanded the case for further proceedings. AR 164, 170. The Appeals Council was concerned that: (1) plaintiff's past relevant work was too infrequent to be considered relevant work experience under 20 CFR 416.965; (2) plaintiff was limited to one and two-step instructions and could

---

[1] The multiple disorders and polysubstance dependence findings were based on Dr Shertock's assessment, which was later superceded by an updated evaluation. AR 171, 218-19, 350-55.

9

therefore not perform semi-skilled work; (3) the ALJ did not determine the cause of plaintiff's dizziness; (4) the ALJ did not evaluate plaintiff's polysubstance dependence under 20 CFR 416.935; and (5) inconsistencies in Dr Shertock's report required an updated mental examination. AR 170-71. But the Appeals Council also found that Dr Luna's opinion lacked objective laboratory or clinical findings. AR 171.

Before the remand hearing, plaintiff underwent updated neurological, physical and mental assessments. Examining neurologist Dr Ronald Greenwald, MD, found plaintiff's subjective complaints to be much greater than his objective findings. AR 332. Examining physician Dr Michael Hebrard, MD, also found:

> The claimant's subjective complaints outweigh her objective findings. On physical examination, she had no evidence of muscular atrophy or abnormal neurological reflexes. The gait was otherwise functional. She was accompanied by a single-point cane. There was good lumbar flexibility of the claimant, who had dropped a plastic soda bottle on the floor and, from the examining table she was able to reach down, bending at the waist without apparent difficulty, to pick it up. It seems that her functional mobility is grossly intact. There was no significant orthopedic dysfunction on today's examination.

AR 306. Dr Hebrard found that plaintiff was able to lift twenty pounds occasionally and ten pounds frequently, stand or walk at least two hours in an eight-hour workday and push or pull without limitation. AR 308-09.

Examining psychologist Dr Laeeq Evered, PsyD, found that plaintiff was moderately restricted in understanding and remembering but not restricted in carrying out short simple instructions, slightly restricted in understanding, remembering and carrying out detailed instructions and making judgments on simple work-related

10

decisions. AR 353. Dr Evered also found that plaintiff was slightly restricted in responding appropriately to supervision, co-workers and work pressure. AR 354.

At the remand hearing, plaintiff testified about her work history, physical and mental impairments and medication and side effects. Plaintiff testified that her doctors wanted her to go to physical therapy and that she tried it but found it was a waste of money. AR 421. Plaintiff also testified that she had worked as a food demonstrator on Saturdays and Sundays for six hours a day as late as 2002. AR 418. Medical expert ("ME") Dr Joseph Jensen testified by phone that plaintiff was able to lift twenty pounds occasionally and ten pounds frequently, stand or walk two hours and sit six hours in an eight-hour workday. AR 439-40.

The new ALJ posed a hypothetical question to VE Jeff Beeman concerning an individual less than fifty years old and able to perform light work with the following limitations: standing or walking two hours and sitting six hours per day, mild restrictions in social functioning, difficulties with co-workers and the general public requiring limited public contact, a forty to fifty percent limitation in detailed and complex concentration, persistence and pace, but no limitation in performing simple one and two step tasks. AR 444-45. The VE testified that an individual with this profile could perform work as an assembler, clerk or machine operator, occupations with a combined 9,500 regional jobs and 471,500 national jobs available. AR 445-46. When the ALJ modified the hypothetical question to impose a forty to fifty percentlimitation in simple repetitive tasks, the VE testified that the individual would not be employable. AR 446-47.

11

The ALJ found that plaintiff suffers from lumbar degenerative disc disease and has a history of hypothyroidism and mood disorder. AR 25. The ALJ concluded that while these conditions constituted a "severe impairment" —— more than a minimal effect on plaintiff's ability to work —— these conditions do not singly or in combination prevent plaintiff from working. AR 25.

Acknowledging that greater weight is to be accorded to the treating physician's opinion when his opinion is supported by objective clinical findings, signs and symptoms, the ALJ found that Dr Manuel Luna's notes only recorded plaintiff's self-reported complaints and the many medications prescribed for them. AR 187-203, 251-60, 275-90. Accordingly, the ALJ afforded more weight to Dr Jensen's opinion, which was based on objective clinical findings and physician assessments. AR 26. The ALJ cited Dr Hebrard's opinion —— based on MRI and EMG reports —— that plaintiff suffered from degenerative disc disease but was otherwise normal. AR 24. The ALJ also cited Dr Evered's opinion that plaintiff had moderately impaired ability to understand and remember short simple instructions but otherwise had only "slight" functional restrictions. AR 25. Both Drs Greenwald and Hebrard found that, consistent with the 2006 EMG report, plaintiff's subjective complaints outweighed the objective findings. AR 25.

The ALJ found plaintiff not credible because she testified that her back spasms prevented her from functioning, yet she took care of her finances, dressed herself and visited with family and friends. AR 26. Dr Evered also noted that plaintiff appeared to be independent in her daily living. Id.

\\

**12**

The ALJ found that although plaintiff could not perform her past relevant work or the full range of light work, her RFC permitted her to perform light work, with the aforementioned physical and mental limitations, as an assembler, clerk or machine operator. AR 27-28.

Plaintiff unsuccessfully requested review of the ALJ's decision. AR 8. After the ALJ's decision became final, plaintiff timely sought judicial review. Doc #14.

## II

This court cannot overturn an SSA final decision under 42 USC § 405(g) unless it is not supported by substantial evidence or is based on legal error. See Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995); Magallanes v Bowen, 881 F2d 747, 750 (9th Cir 1989). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F3d at 1039. Determinations of credibility, conflicts in medical testimony and all ambiguities are resolved by the ALJ and the court defers to the ALJ's findings. See id; Magallanes, 881 F2d at 750.

"Disabled" is defined by the SSA as "unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 CFR § 404.1527(a).

\\
\\

13

III

Plaintiff challenges the final decision on three grounds: (1) the ALJ's RFC findings were based on his improper rejection of the opinions of "treating physician" Dr Leland Luna and examining psychologist Dr Shertock; (2) the ALJ improperly discounted her subjective complaints and credibility; and (3) the vocational evidence did not sustain defendant's burden to prove that there are sufficient jobs in the national economy which plaintiff can perform. Doc #14 at 1, 6-10.

A

The first issue is whether substantial evidence supports the ALJ's weighting of ME Dr Jensen's opinion against "treating physician" Dr Luna's opinion.  Although more weight is generally accorded to a treating physician's opinion than a non-treating physician's opinion, the ALJ may reject a treating physician's controverted opinion if the ALJ has specific and legitimate reasons supported by substantial evidence. <u>Sandgathe v Chater</u>, 108 F3d 978, 980 (9th Cir 1997).  "Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." <u>Morgan v Commissioner of Social Security Administration</u>, 169 F3d 595, 600 (9th Cir 1999).

The ALJ rejected Dr Luna's opinion because it was inconsistent with objective clinical findings, plaintiff's medical treatment and medication and her daily activities.  AR 26.  Rather, the ALJ accepted ME Dr Jensen's opinion because it was consistent with objective clinical findings and physician assessments.  Id.

14

First, it appears doubtful that Dr <u>Leland</u> Luna's opinion was really entitled to deference given that the record clearly establishes that Dr <u>Manuel</u> Luna was in fact plaintiff's treating physician. AR 267, 431.

Second, the court finds that objective clinical findings and physician assessments support the finding that plaintiff was able to perform light work. The SSA defines light work thusly:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 CFR § 404.1567. The plaintiff's MRI images revealed degenerative disc disease but only mild canal and foraminal narrowing. AR 261. The EMG test showed nothing abnormal except some internal disc disruption. AR 274. From the MRI images, EMG test and his own examination, Dr Hebrard found plaintiff able to lift twenty pounds occasionally and ten pounds frequently, stand or walk at least two hours in an eight-hour workday and push and pull without limitation — ie, able to perform light work. AR 308-09. This is consistent with Dr Momi's 2002 assessment and both Drs Hebrard's and Greenwald's assessments that plaintiff's subjective complaints are "much greater than objective findings." AR 214, 306, 331.

Dr Leland Luna, by contrast, provided no objective laboratory or clinical findings to support the existence of plaintiff's alleged condition. AR 267.

Plaintiff argues that the ALJ mischaracterized and thus improperly discounted Dr Leland Luna's opinion by concluding that Dr

15

Luna's opinion found plaintiff able to perform sedentary work.  Doc #14 6-7.  Defendant concedes that "the ALJ erred in his identification of Dr Luna's assessment" but contends that the error was harmless because "the ALJ reasonably determined that, in total, substantial evidence of record supported an RFC for a range of light work."  Doc #15-2 at 5.

"A decision of the ALJ will not be reversed for errors that are harmless."  Burch v Barnhart, 400 F3d 676, 679 (9th Cir 2005).  The ALJ's mischaracterization of plaintiff's capacity for sedentary work was harmless because sedentary work is not at issue.  The ALJ properly relied on the testimony of ME Dr Jensen, who in turn relied on the assessments by Drs Greenwald and Hebrard, to find plaintiff able to perform light work with certain limitations.  AR 27, 437, 439-40.  The ALJ properly discounted "treating physician" Dr Leland Luna's assessment in favor of ME Dr Jensen's conclusions.  Accordingly, substantial evidence supports the finding plaintiff could perform light work.

Plaintiff also argues that the ALJ improperly discounted Dr Shertock's assessment that plaintiff was unable to interact with supervisors and co-workers.  AR 219.  Plaintiff argues that the ALJ did not specifically credit this limitation and that the ALJ improperly generalized it as "limited public contact" in a hypothetical question posed to the VE.  Doc #14 7-8.  Defendant counters that Dr Evered considered Dr Shertock's earlier statement but disagreed with Dr Shertock's opinion and that Dr Evered's opinion controls.  Doc #15-2 at 5-6.

The court agrees with defendant and finds that the ALJ properly accorded greater weight to Dr Evered's opinion than to Dr

16

Shertock's opinion. The Appeals Council remanded the case, in part, because of Dr Shertock's inconsistent statements. The Appeals Council stated that "Dr Shertock's report appears to contain some inconsistencies. * * * In view of the apparent inconsistencies and the lack of evidence regarding the claimant's mental problems, the [ALJ] will obtain an updated consultative mental status examination upon remand." AR 171.

Dr Evered, who conducted the updated mental examination, found that plaintiff had a slight restriction interacting appropriately with supervisors, co-workers and the public. AR 354. Although there was a "slight" restriction, the ALJ posed a hypothetical question to the VE in which an individual "would have difficulties with co-workers and the general public." AR 445. These limitations were included in the hypothetical question in addition to —— and not in lieu of —— the generalized "limited public contact" limitation. Id. Plaintiff, therefore, is simply mistaken in asserting that the ALJ only included a generalized "limited public contact" limitation.

The court also finds substantial evidence supports the ALJ's finding that plaintiff had only "slight" interaction restrictions. Plaintiff worked as a food demonstrator, a job with a great deal of public contact. AR 418. Plaintiff also testified that she has no difficulties getting along with people, AR 432-33, a statement consistent with plaintiff's participation in church functions, teaching prayers and dining out with friends. AR 125, 426. Accordingly, the ALJ properly discounted Dr Shertock's opinion.

//

**17**

**B**

The next issue is whether the ALJ improperly discounted plaintiff's "symptom reporting" —— that is, her credibility. Doc #14 at 8. Plaintiff contends that the ALJ did not make explicit findings regarding her written statements and that the lack of findings leaves doubt whether plaintiff's statements were weighed properly under SSR 96-7p (1996). Doc #14 at 9. Plaintiff and defendant agree that the ALJ must provide clear and convincing reasons to reject plaintiff's statements but disagree on whether the ALJ met that burden. Doc #14 at 8, Doc #15-2 at 8. See <u>Lester v Chater</u>, 81 F3d 821, 834 (9th Cir 1995).

As stated in the facts, the ALJ found plaintiff not credible because her complaints of back spasms and not being able to function were contradicted by her testimony regarding taking care of her own finances, dressing herself and visiting with friends and family. AR 26. The ALJ also commented that "[t]here is no evidence that claimant has a neurological condition or basis for her reported jerking or twitching and consultative examinations and the undersigned finds no evidence of a medically in [sic] determinable impairment." AR 26. Drs Greenwald and Hebrard also found that plaintiff's subjective complaints far outweighed their objective findings based on MRI images and an EMG test. AR 25. The ALJ further found that plaintiff had not been referred to or undertaken more "aggressive treatment." AR 26.

Accordingly, the ALJ provided clear and convincing reasons for discounting plaintiff's credibility and the court finds no basis for disturbing the ALJ's findings.

//

18

C

Finally, plaintiff argues that the vocational evidence does not sustain defendant's burden to prove plaintiff is able to perform "substantial gainful work that exists in the national economy." 20 CFR § 404.1505, Doc #14 at 10. The ALJ posed two hypothetical questions to establish the existence of gainful work that plaintiff is able to perform —— one in which an individual was able to perform simple repetitive tasks and one in which an individual had a forty to fifty percent limitation in performing simple repetitive tasks. Plaintiff contends that "[p]laintiff's RFC was in between the RFCs in the hypothetical questions. According to the ALJ's findings, Plaintiff had a 10% decrease in ability to perform simple repetitive tasks." Doc #14 at 10.

A hypothetical question must describe all of plaintiff's limitations. Gallant v Heckler, 753 F2d 1450, 1457 (9th Cir 1984). Plaintiff argues that the ALJ did not use the specific term "10% decrease in ability to perform simple repetitive tasks" as a limitation. But the ALJ did credit this limitation as follows:

> Due to her mood disorder and pain claimant has mild restriction in activities of daily living and social functioning as well as and [sic] concentration persistence and pace. The latter equates to a 40 to 50% decrease in detailed and complex task [sic] and a 10% decrease in simple and repetitive tasks.

AR 26. The Ninth Circuit even specifically held in a recent published opinion that a person can perform simple repetitive tasks with a moderate limitation in mental functioning as well as concentration. Stubbs-Danielson v Astrue, 539 F3d 1169, 1173-74 (9th Cir 2008). The ALJ's hypothetical question included the limitation "for concentration, persistence in pace, would be mild"

19

and equated the limitation to a ten percent decrease in simple repetitive tasks in the decision.  Accordingly, the ALJ described the relevant limitation.  AR 26.

The vocational evidence is sufficient to sustain defendant's burden of proof.

IV

The ALJ's determination that plaintiff is capable of light work and therefore not disabled within the meaning of the Act is supported by substantial evidence in the record and free of legal error.  42 USC § 405(g).  Furthermore, the court also notes that 42 USC § 404.1530(a) requires an SSI claimant to follow prescribed treatment.  This plaintiff declined physical therapy, thus further complicating her quest for SSI.  Plaintiff's motion for summary judgment or remand is DENIED and defendant's motion for summary judgment is GRANTED.

The clerk is directed to enter judgment in favor of the defendant and to close the file.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge